**QUAKER STATE CORPORATION, Plaintiff,**

v.

**UNITED STATES COAST GUARD, Defendant.**

**Civ. A. No. 87–55 Erie.**

United States District Court, W.D. Pennsylvania.

July 31, 1989.

grants summary judgment in favor of plain-

Chester R. Babst, III, Dean A. Calland, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, Pa., for Quaker State.

Lawrence R. Liebesman, Ellen M. Mahan, Michael D. Goodstein, Derek A. Capizzi, James Augustine, Washington, D.C., Craig R. McKay, Asst. U.S. Atty., Pittsburgh, Pa., for U.S. Coast Guard.

OPINION

GERALD J. WEBER, District Judge.

In this litigation the government seeks to recover from Quaker State the costs of excavation and removal of oil contaminated ground at a site in the Allegheny National Forest. The subject site was an abandoned containment pit once used in oil drilling operations, and was allegedly discharging oil into a creek in the National Forest.

Quaker State successfully rebuffed the government's first attempt to impose liability under the Clean Water Act, 33 U.S.C. § 1321 *et seq.* based on the court's conclusion that Quaker State was not an "owner or operator" within the meaning of § 1321(f) of the Act. *Quaker State v. United States Coast Guard,* 681 F.Supp. 280 (W.D.Pa.1988). The government subsequently amended its claim with leave of court and sought to impose liability under § 1321(g), alleging that Quaker State is a culpable third party under the Act. Quaker State has filed a motion for summary judgment seeking to head off this latest assault. The parties have submitted briefs and evidentiary material and this matter is ripe for disposition.

We set forth the facts in some detail in our previous opinion, 681 F.Supp. 280, and we present the Reader's Digest version here. Quaker State conducted drilling operations on or in the vicinity of the subject site for many years until its lease to the

tiffs).

mineral rights expired in 1975. Then and now, the surface rights to the site were owned by the National Forest Service. By 1978, Quaker State had abandoned the site. As part of its abandonment procedure, and allegedly in accord with the desire and/or direction of the National Forest Service, Quaker State filled the old containment pit with earth. Eight years later the Coast Guard discovered the discharge.

The Clean Water Act is designed to provide the government with a quick and ready source for reimbursement of cleanup costs. Thus the owner or operator of the site is strictly liable for the cost of cleanup, *except* where he can prove:

> that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government or (D) an act or omission of a third party ... or any combination of the foregoing clauses.

33 U.S.C. § 1321(f)(2). In this case, we have concluded that the "owner/operator" within the meaning of the Act was the National Forest Service which owned the surface rights, and not Quaker State which had left the site years before. 681 F.Supp. 280. Of course, as a practical matter, this left the government without reimbursement.

But the Act also provides a means for recovery of cleanup costs from culpable third parties:

> In any case where an owner or operator ... proves that such discharge ... was caused solely by an act or omission of a third party, or was caused solely by such an act or omission in combination with an act of God, an act of war, or negligence on the part of the United States Government, such third party shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred ... except where such third party can prove that such a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of another party ... or any combination of the foregoing clauses ...

the United States may bring an action against the third party in any court of competent jurisdiction to recover such removal costs.

33 U.S.C. § 1321(g).

In support of its motion, Quaker State alleges that the National Forest Service is at least partly to blame for any discharge of oil from this site. It is alleged that officials of the Forest Service directed that the pit be filled but did not inspect the pit for the presence of oil, did not give directions on how to backfill it properly, and subsequently did nothing to prevent a spill. Because the Forest Service is culpable at least in part, Quaker State argues that the government cannot prove that the discharge was caused "solely" by Quaker State, and therefore cannot recover under § 1321(g).

Quaker State cites a great many cases for the premise that an owner/operator cannot shift responsibility to a third party unless the owner/operator establishes that he is blameless, and that the third party is culpable alone. We have no quarrel with the holdings in these cases, but they are distinguishable on one simple fact. In the present case, the owner/operator is the United States Government.

If we return to § 1321(f)(2) we will see that an owner/operator can avoid liability if he proves that the "discharge was caused *solely* by ... (C) negligence on the part of the United States Government or (D) an act or omission of a third party ... *or any combination* " of such factors. In this case the government has alleged that Quaker State caused the discharge, and the statute explicitly excuses any contributing negligence of the government.

Section 1321(g) is structured in a similar manner. A third party is liable if the discharge:

> "was caused solely by an act or omission of [the] third party, *or* was caused solely by such an act or omission *in combination with* an act of God, an act of war, or *negligence on the part of the United States Government* ..." (emphasis added).

Thus, unlike the negligence of any other owner/operator, the negligence of the United States Government (in this case, the Forest Service) does not shield Quaker State from liability as a culpable third party. Indeed, the Act has specifically carved this out as an exception. Even if all the allegations of Forest Service negligence are true, if the government proves that Quaker State in some measure contributed to the discharge, Quaker State is liable for the costs of cleanup.

If this result seems harsh, it is nonetheless consistent with the structure and purpose of the Act. Third party liability is narrow, and is ordinarily extinguished by the liability of a culpable owner/operator, but Congress clearly stated its intention to excuse the contributory negligence of the United States to hold the culpable private party liable. In this way, Congress ensures that someone in the industry, whether owner/operator or third party, will be liable for the costs of cleanup.

Our decision today makes the issue of the Forest Service's negligence irrelevant. The salient issues remaining for trial on liability are a) was there a discharge, and b) was it caused by an act or omission of Quaker State, either alone, or in concert with an act of God, act of war or negligence of the United States Government. In this regard, we note that to prevail the government need not prove negligence on the part of Quaker State. The culpable third party is liable for his conduct "without regard to whether any such act or omission was or was not negligent." 33 U.S.C. § 1321(f)(2).

This matter is now ripe for trial on the issue of liability. A Pretrial Conference and trial date will be scheduled at a later date. Issues concerning damages, and discovery on such matters, are deferred until after a determination on liability. An appropriate Order accompanies this Opinion.

### ORDER

AND NOW, in accord with this accompanying Opinion, it is hereby ORDERED that Quaker State's Motion for Summary Judgment is DENIED. This matter is ripe for trial on liability and a Pretrial Conference will be scheduled at a later date. Discovery and trial on issues of damages are deferred until after a determination on liability.

So ORDERED.